Anthony P. Cali (Pro Hac Vice Forthcoming)
anthony.cali@stinson.com
STINSON LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004-4584
Telephone:    602.279.1600

Marshall J. Hogan, Bar No. 286147
mhogan@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone:    714.427.7000
Facsimile:    714.427.7799

Attorneys for Twain GL XXV, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| In re:<br><br>SA HOSPITAL ACQUISITION GROUP, LLC<br><br>Debtor. | Case No. 9:23-bk-10690-RC<br><br>Chapter 11<br><br>**TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    OST Pending<br>Time:    OST Pending<br>Place:    1415 State Street<br>         Santa Barbara, CA 93101<br>         Courtroom 201 |
|---|---|

TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:

Twain GL XXV, LLC ("Twain"), a creditor and party-in-interest, respectfully requests that the Court immediately dismiss the above-captioned pending bankruptcy proceeding of debtor and debtor-in-possession SA Hospital Acquisition Group, LLC ("Debtor"), Case No. 9:23-bk-

4874-0854-6168

MOTION TO DISMISS

10690-RC, pursuant to section 1112(b) of title 11 of the United States Code. The Circuit Court of the City of St. Louis has appointed a state court receiver over the Debtor, its operations, and its assets, and has vested the receiver with sole and exclusive authority to file a bankruptcy petition for the Debtor. The receiver does not consent to the filing of this bankruptcy case and so it should be dismiss. This Motion is supported by the accompanying Memorandum of Points and Authorities and the Declaration of Daniel Wiggins (the "Wiggins Declaration") concurrently filed herewith.

Dated: August 15, 2023

STINSON LLP
Anthony P. Cali

- and -

SNELL & WILMER L.L.P.

By: /s/ Marshall J. Hogan
    Marshall J. Hogan

Attorneys for Twain GL XXV, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Debtor's Defaults and Mismanagement of the Hospital**

1. Jeffrey Ahlholm and Lawrence E. Feigen, purportedly as a co-managing members of SA Hospital Acquisition Group, LLC, (the "Debtor") filed a voluntary Chapter 11 petition on behalf of the Debtor on August 11, 2023.

2. The Debtor is a guarantor of debt incurred by SA Hospital Real Estate Holdings, LLC (the "Tenant").

3. The Debtor and Tenant have common ownership and management. Prior to the entry of the Receivership Order (defined below), both the Debtor and Tenant were managed by Jeffrey Ahlholm and Lawrence E. Feigen. The members of both companies are Jeffrey Ahlholm, Lawrence E. Feigen, and Troy A. Schell.

4. Twain is the fee owner of approximately 7.148 acres of real property located in the City of St. Louis, Missouri (the "Premises").

5. On or about December 29, 2021, Tenant and Twain entered into a Ground Lease (the "Ground Lease"), whereby Tenant leased the Premises for the purpose of owning and operating the South City Hospital in St. Louis, Missouri (the "Hospital"), in exchange for certain base and supplement rent payments, among numerous other obligations.

6. In conjunction with the execution of the Ground Lease, the Debtor (among other guarantors) executed a "Completion and Rent Payment Guaranty" in favor of Twain, guaranteeing all obligations owed by Tenant under the Ground Lease (the "Guaranty").

7. Contemporaneous with the execution of the Ground Lease and the Guaranty, Tenant and the Debtor entered into a Master Lease and Sublease Agreement permitting the Debtor to operate the Hospital (the "Sublease").

8. Under the terms of the Sublease, the Debtor must pay Tenant an amount sufficient to make all payments due and owing to Twain under the Ground Lease. The Debtor has failed to make such payments as set forth more fully herein.

9. Tenant defaulted under the Ground Lease in numerous ways, including by (i) failing to make all payments due under the Ground Lease, (ii) causing unreasonable delays and making misrepresentations in connection with the construction of the Hospital; (iii) failing to provide financial statements as required by Section 13.18 of the Ground Lease; and (iv) exposing the Hospital and Premises to numerous lawsuits, judgments, mechanics' liens, and other obligations, and otherwise failed to operate and manage the Hospital in a safe and stable condition, among other issues.

10. The Ground Lease required Tenant to make periodic rent payments to Landlord, on an agreed-upon schedule.

11. Despite demand from Landlord, Tenant failed to make rent payments due and owing under the Ground Lease.

12. In addition, the Ground Lease imposed certain obligations on Tenant related to the construction of the Premises, including the obligation to use commercially reasonable efforts to commence and complete construction diligently and on time, pursuant to the terms of the Ground Lease and any agreed-upon schedule(s), and the obligation to keep the Premises free and clear of mechanics' liens and other claims.

13. Tenant defaulted under the Ground Lease in numerous ways, by failing to finish construction before the agreed-upon completion date; making material misrepresentations in connection with the construction, including statements that the relevant loans and work were consistent with the agreed-upon budget (they were not); and failing to keep the Premises free and clear of mechanics' liens.

14. The Debtor and Tenant had failed to keep the Hospital in good and working order. The Debtor and Tenant were also facing mounting claims and lawsuits, subjecting Hospital to significant liabilities, expenses, and risks.

15. The Debtor and Tenant's mismanagement is further evidenced by the multitude of lawsuits and liens they face in connection with operating the Hospital. These lawsuits include, but are not limited to, the following:

a. On April 28, The Metropolitan St. Louis Sewer District ("MSD") sued Landlord and Tenant for unpaid charges, totaling $27,298.55 plus fees and expenses. *The Metropolitan St Louis Sewer District v. SA Hospital Real Estate Holdings LLC, et al.*, No. 2322-CC00842 (Mo. Cir.)

b. On May 2, MSD filed an action to collect approximately $2,000 in unpaid bills. The matter was dismissed on May 4, 2023, presumably because Tenant paid it. *The Metropolitan St Louis Sewer District v. SA Hospital Real Estate Holdings LLC, et al.*, No. 2322-AC05670 (Mo. Cir.)

c. On May 3, 2022, a judgment was entered against Guarantor by the Division of Employment Security ("DES"), in the amount of $51,868.99. *Division of Employment Security v. SA Hospital Acquisition Group, LLC*, No. 2222-TJ01143 (Mo. Cir. May 3, 2022).

d. In January, 2023, MSD sued Tenant seeking $263,432.53. *The Metropolitan St Louis Sewer District v. SA Hospital Real Estate Holdings LLC, et al.*, No. 2322-CC00020 (Mo. Cir.).

e. In August 2022, a class action lawsuit was filed against Guarantor for a data breach. *Monolito Stark v. SA Hospital Acquisition Group LLC d/b/a South City Hospital f/k/a St. Alexius Hospital*, No. 2222-CC09326 (Mo. Cir.).

f. In November, 2022, Metro Public Safety filed suit against Guarantor for $33,000 due for security services. *Metro Public Safety Inc. v. SA Hospital Acquisition Group, LLC*, No. 222-CC09986 (Mo. Cir.).

g. In December 2022, a $208,560.22 judgment was entered against Guarantor, in favor of DES. *Division of Employment Security v. SA Hospital Acquisition Group, LLC*, No. 2222-TJ01813 (Mo. Cir.)

h. In December, 2022, Sysco St. Louis filed suit against Guarantor seeking $140,162.43. *Sysco St. Louis LLV v. SA Hospital Acquisition Group, LLC*, No. 22SL-CC05357 (Mo. Cir.).

i. In August, 2022, Vista link Health Group obtained a default judgment against SA Acquisition Group in the amount of $490,563.82. *Vistalink Health Group, L.L.C. v. SA Hospital Acquisition Group LLC d/b/a South City Hospital*, No. 21SL-CC04042 (Mo. Cir. August 12, 2022).

j. Medtronic sued Guarantor in March, 2023 for approximately $400,000 due under a credit agreement. *Medtronic Inc. v. SA Hospital Acquisition Group, LLC*, No. 2322-CC00520 (Mo. Cir.).

k. On March 31, 2023, Soliant Heath sued Guarantor for approximately $440,000 due under a contract. *Soliant Health LLC v. SA Hospital Acquisition Group, LLC*, No. 2322-CC00648 (Mo. Cir.).

l. On September 22, 2022, Med Waste Gone LLC sued Guarantor and American Healthcare Systems Missouri LLC (the contractor engaged by SA Hospital and/or Guarantor to manage the Hospital) for approximately $25,0000. The matter was dismissed on April 19, 2023 presumably due to settlement. *Med Waste Gone, LLC v. SA Hospital Acquisition Group, LLC, et al.*, No. 22SL-CC04144 (Mo. Cir.).

m. On October 6, 2022, former Hospital CEO Gregory Brentano sued Guarantor and AHS for breaching a settlement/release agreement in connection with the end of his employment. Amounts allegedly due are not disclosed in the lawsuit. *Gregory Brentano v. SA Hospital Acquisition Group, LLC*, et al., No. 22SL-CC04347 (Mo. Cir.).

n. Pipe Technologies sued Guarantor in October, 2022, seeking $1,609,804 in amounts due under a factoring agreement. It appears this action was settled on or around April 25, 2023. *Pipe Technologies Inc. v. SA Hospital Acquisition Group, LLC*, No. 22SL-CC04469 (Mo. Cir.).

o. On March 31, 2023, Bryant Expert Medical Equipment Service sued Guarantor under numerous rental agreements, and is also seeking replevin of equipment. *Bryant Expert Medical Equipment Service Inc. v. SA Hospital Acquisition Group, LLC*, No. 23SL-CC01378 (Mo. Cir.).

    p.  CGH Companies d/b/a Comp Health sued Guarantors on July 2, 2022 in Utah, seeking approximately $400,000 under an agreement for "Physician Locum Tenens Coverage Fees." *CHG Companies v. SA Hospital Acquisition Group, LLC*, No. 2:22-cv-00450-RJS-DAO (C.D. Utah).

    q.  NFS Leasing sued Guarantor in a Missouri federal court (E.D. Mo.) in February 2023, seeking to recover approximately $86,000 under an equipment lease. *NFS Leasing Inc. v. SA Hospital Acquisition Group, LLC, et al.*, No. 4:23-cv-00203-AGF (E.D. Mo.).

16. The most recent financial statements provided by Tenant prior to the Receivership Action (defined below) showed that (i) Tenant's liabilities exceed its assets by roughly $30,000,000; and (ii) Tenant lost over $13,000,000 in 2022.

**B. Receivership of Debtor**

17. On May 16, 2023, Twain sued the Debtor and Tenant in the Circuit Court of the City of St. Louis, Missouri, Case No. 2322-CC00960 (the "Receivership Action").

18. Contemporaneously with the commencement of the Receivership Action, Twain sought the emergency appointment of a state court receiver of the Debtor and Tenant, their property and their operations.

19. May 25, 2023, Circuit Court of the City of St. Louis, Missouri appointed MorrisAnderson & Associates, Ltd. (the "Receiver") as receiver of the Debtor and Tenant, their operations, and their assets (the "Receiver Order"). A true and correct copy of the Receiver Order is attached as Exhibit 1 to the Wiggins Declaration.

20. On May 31, 2023, MorrisAnderson filed its bond and took its position as general receiver over the Debtor and Tenant.

**C. The Receiver's Sole Authority to file Bankruptcy for the Debtors**

21. The Receiver Order vested the Receiver with the sole authority to file a bankruptcy petition on behalf of the Debtor, and enjoined the Debtor's owners and managers from any action inconsistent with that authority. The Receiver did not and does not consent to this bankruptcy case, as set forth more fully in the Wiggins Declaration.

22. To that end, paragraph 5(e) of the Receiver Order states as follows:

> 5. <u>Receiver's Powers</u>. The Receiver shall have the usual powers vested, conferred, enjoyed, and exercised by receivers according to the practice of this Court, the Act, and other statutes of this State including, without limitation the following:
>
> e. The Receiver shall be vested with, and is authorized and empowered to exercise all the powers of Defendants, their officers, directors, shareholders, and general partners or persons who exercise similar powers and perform similar duties, <u>including without limitation the sole authority and power to file a voluntary petition under Title 11 of the United States Code.</u>

Wiggins Declaration, Ex. 1 at ¶ 5(e) (emphasis added).

23. To emphasize and clarify the scope of authority granted in Paragraph 5(e) of the Receiver Order, Paragraph 10 of the Receiver Order provides as follows:

> Defendants and their agents, servants, employees, representatives, attorneys, officers, directors, managers, members, partners, or other individuals exercising or having the power to exercise control over the affairs of the Defendants are hereby enjoined from exercising any and all the powers of the Defendants, their officers, directors, shareholders, and general partners or persons who exercise similar powers and perform similar duties, including without limitation the authority and power to file a voluntary petition under Title 11 of the United States Code. <u>For the avoidance of doubt, no person or entity other than the Receiver shall have the authority and power to file a voluntary petition for the Defendants under Title 11 of the United States Code.</u>

Wiggins Declaration, Ex. 1 at ¶ 9 (emphasis added).

24. By virtue of the clear and unambiguous language of the Receiver Order, Jeffrey Ahlholm and Lawrence E. Feigen did not have corporate authority to file this bankruptcy case.

**D. Urgency of this Motion**

25. At the time that Twain initiated the Receivership Action, the Hospital was in a state of instability and disrepair, posing serious concerns about it ongoing viability and the safety of its patients.

26. The Debtor and Tenant's mismanagement of the Hospital has posed significant risk to the Premises and its revenue-producing potential. The Hospital suffered massive financial losses under their stewardship. The Debtor and Tenant have been inundated with lawsuits, including mechanics' liens and mounting claims for damages.

27. It is patently obvious that the Debtor and Tenant are incapable of ensuring the preservation of Twain's collateral, which is why Twain sought the appointment of the Receiver, and the District Court granted such request through the Receivership Order.

28. The immediate dismissal of this bankruptcy case and continued appointment of the Receiver is critical to preserve the Premises, manage the mounting claims and liabilities, maintain patient records, collect accounts receivable, and secure the Premises and the assets within.

29. Twain has filed this motion because it has determined that it is in the best interest of the receivership estate not to commence a bankruptcy case, but to remain in receivership in Missouri and have the Receiver continue to manage the Debtor and Tenant, their operations, and their assets.

## II.    ARGUMENT

**A. The Filing of the Debtor's Bankruptcy Petition Was Prohibited by the Receiver Order**

If a Court finds that those who purport to act on behalf of a corporate entity have not been granted authority by local law to institute bankruptcy proceedings, it has no alternative but to dismiss the bankruptcy petition. *Price v. Gurney,* 324 U.S. 100, 106 (1945); *In re DB Cap. Holdings, LLC,* 463 B.R. 142 (B.A.P. 10th Cir. 2010) (stating that a "bankruptcy case filed on behalf of an entity without authority under state law to act for that entity is improper and must be dismissed.") "State law includes the decisions of state courts." *In re Licores,* No. SA 13-10578-

1  MW, 2013 WL 6834609, at *5 (C.D. Cal. Dec. 20, 2013) (citing *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir.1985)).

In the case of *In re Licores*, a corporation was placed under a state court receivership prior to bankruptcy. The receivership order vested the state court receiver with the sole authority to file a bankruptcy petition for the company. Notwithstanding that order, owners of the company filed a voluntary chapter 11 bankruptcy petition for the company. Seven days after the filing, the receiver filed an emergency motion to dismiss the chapter 11, arguing that the owners did not have authority to file the case in light of the receivership order. The bankruptcy court dismissed the chapter 11 case finding that the "[d]ebtor lacked authorization to file bankruptcy in view of the vesting in the [r]eceiver of the exclusive authority to file." *Id.* at *1. The owners appealed the dismissal to the U.S. District Court for the Central District of California, arguing that the state court lacked authority to enter an order preventing corporate directors from filing bankruptcy for the company. *Id.* at *5.

The district court, however, affirmed the bankruptcy's dismissal. *Id.* at *8. The reviewing court reasoned that while state courts cannot deny a corporation the right to file bankruptcy, state law, through a receivership order, had full authority to "identif[y] who has the power to file the bankruptcy petition on behalf of the Debtor." *Id.* at *6. The district court aptly stated:

> As the Supreme Court stated in Price, "nowhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation." Price, 324 U.S. at 107. Thus, the Receivership Order does not run contrary to Congress's right to enact uniform laws of bankruptcy or change the application of bankruptcy laws to debtors.

*Id*.

The *In re Licores* court ruled that because the state court receivership order did not

preclude the company from filing bankruptcy, and because the order vested the receiver with the exclusive ability to file on behalf of the debtor company, the bankruptcy case was properly dismissed as being filed without requisite authority. *Id*. at *7; *accord Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587, 589-91 (S.D. Tex. 1994) (in a divorce proceeding, the district court affirmed the bankruptcy court's dismissal of a chapter 11 case filed by the corporation's president, holding that the power to file bankruptcy had been vested exclusively in the state court receiver).

The Ninth Circuit has also very recently addressed this issue in *In re Sino Clean Energy, Inc.,* 901 F.3d 1139 (9th Cir. 2018). In that case, a state court entered an order that appointed a receiver over the company and gave him the power to remove the company's board of directors, which he did. After removal of the board, the former board members filed a chapter 11 bankruptcy for the company. In dismissing the case, the bankruptcy court held that the former directors "filed without corporate authority" because they "had been replaced by the Receiver" prior to the filing. *Id*. at 1141. The district court affirmed. *Id.* Here, Paragraphs 5(e) and 9 not only grant the Receiver sole authority to file a bankruptcy petition, they also affirm – explicitly – that the managers and members of the Debtors cannot file such a petition.

Looking to Nevada corporate law, the Ninth Circuit held that only current directors had authority to file bankruptcy; because the directors had been removed under the receivership order, they therefore had no authority to file the bankruptcy case. *Id.* at 1142. Like the *In re Licores,* court above, the appellate court cited *Price v. Gurney*, 324 U.S. 100, 106–07 (1945) for the proposition that "State law determines who has the authority to file a voluntary bankruptcy petition on behalf of a debtor." *Sino,* 901 F.3d at 1141. The Ninth Circuit made clear that "Nevada state law **includes the decision of its state courts**." *Id.* (emphasis added) (citing *Tenneco W., Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985).

In the present case, the St. Louis Circuit Court had, and exercised, the power to determine, not whether the Debtor could file bankruptcy, but rather who could authorize a bankruptcy filing for the Debtor. That court's decision was to grant the Receiver the sole and exclusive right to file bankruptcy on behalf of the Debtor. *See* Wiggins Declaration, Ex. 1. The Circuit Court's decision

was based on the Debtor's inability to maintain and preserve its collateral and business operations for the benefit of its creditors as well as its inability to operate the Hospital in a safe and efficient manner. This decision is binding as "state law" just as would be a statute regarding the issue. Accordingly, under well-established precedent, neither Jeffrey Ahlholm, Lawrence E. Feigen, nor any other member or managers of the Debtor had the authority to file the current bankruptcy case, and the case must be dismissed for that reason.

### III.    CONCLUSION

By virtue of the plain and unambiguous language of the Receiver Order, Jeffrey Ahlholm and Lawrence E. Feigen did not have corporate authority to file the instant bankruptcy petition. The duly-appointed and acting Receiver did not, and does not, consent to the filing of the petition or the pending bankruptcy proceeding.

For these reasons, and based on the foregoing cited authority, this case must be dismissed.

Dated:  August 15, 2023

STINSON LLP
Anthony P. Cali

- and -

SNELL & WILMER L.L.P.


By: /s/ Marshall J. Hogan
    Marshall J. Hogan

Attorneys for Twain GL XXV, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
600 Anton Blvd., Suite 1400, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES and DECLARATION OF DANIEL WIGGENS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 15, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Brian David Fittipaldi**    brian.fittipaldi@usdoj.gov
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) xxxx, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 15, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA FEDEX**

Honorable Ronald A. Clifford III
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 233 / Courtroom 201
Santa Barbara, California 93101-2511

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/15/23 | Kelley Nestuk | /s/Kelley Nestuk |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.