MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:    (310) 271-6223
Facsimile:    (310) 271-9805
E-mail: Michael.Berger@bankruptcypower.com

*Proposed* Counsel for Debtor and Debtor-in-Possession,
SA Hospital Acquisition Group, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>SA HOSPITAL ACQUISITION GROUP, LLC<br><br>Debtor and Debtor-in-Possession. | CASE NO.: 9:23-bk-10690-RC<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF**<br><br>[LBR 2081-1 and LBR 9075]<br><br><u>Hearing Scheduled For:</u><br>Date:    August 18, 2023<br>Time:    11:00 a.m.<br>Place:    Courtroom 201<br>          United States Bankruptcy Court<br>          1415 State Street<br>          Santa Barbara, CA 93101 |

**TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE; CREDITOR TWAIN GL XXV, LLC; RECEIVER DANIEL WIGGINS; THE OFFICE OF THE UNITED STATES TRUSTEE; AND OTHER CREDITORS AND PARTIES IN INTEREST:**

SA Hospital Acquisition Group, LLC ("<u>Debtor</u>") hereby submits its Opposition to Twain GL XXV, LLC's ("<u>Twain</u>") Motion to Dismiss Chapter 11 Case, as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Twain's Motion to Dismiss Chapter 11 Case should be denied as Debtor's managing members Lawrence E. Feign and Jeffrey Ahlholm had authority to file Bankruptcy on behalf of the Debtor, despite the Circuit Court of the City of St. Louis, Misouri's appointment of Receiver Daniel Wiggins on behalf of Twain as a creditor. The authority on point is *In re Corporate & Leisure Event Productions, Inc.*, 351 B.R. 724 (Bankr. D. Ariz. 2006). In that case, the Bankruptcy Court held that when a receiver is appointed by a state court on behalf of creditor of a debtor, even if the receivership order includes restrictions on the directors of the debtor from filing Bankruptcy, such restrictions are in violation of the debtor's constitutional rights, and are not upheld by Bankruptcy Courts. (*In re Corporate & Leisure Event Productions, Inc.,* 351 B.R. 724 (Bankr. D. Ariz. 2006)).

Debtor's Chapter 11 is in the best interest of the creditors. Since May 23, 2023, when the Receiver began managing the Debtor's Hospital, the Receiver shut down the Debtor's hospital operations and has been attempting to liquidate the Debtor's assets. Through the Bankruptcy, Debtor instead will resume the Debtor's hospital operations in order to sell the hospital as a going concern and assign Tenant's Ground Lease with Twain, to generate significantly more funds to pay off the creditors of the estate. Debtor's management believes selling the Debtor and Tenant's assets together as an ongoing concern will generate approximately $18,000,000.00 more for the creditors, then a fire sale of the assets as proposed by the Receiver.

Based on the holding in *In re Corporate & Leisure Event Productions, Inc.*, the Debtor's corporate management had authority to file Debtor's Chapter 11 case. Debtor's Chapter 11 case is in the best interest of the creditors of the estate. Wherefore, Twain's Motion to Dismiss Chapter 11 Case should be denied.

///

DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF
POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF

## II.    SUMMARY OF PERTINENT FACTS

*A. General Background of the Debtor and Debtor's Failed Sale of Debtor's Hospital to American Healthcare Systems*

Jeffrey Ahlholm and Lawrence E. Feigen, as co-managing members of SA Hospital Acquisition Group, LLC, (the "Debtor") filed a voluntary Chapter 11 petition on behalf of the Debtor on August 11, 2023. The Debtor is a guarantor of debt incurred by SA Hospital Real Estate Holdings, LLC (the "Tenant"). The Debtor and Tenant have common ownership and management. Prior to appointment of the Receiver, both the Debtor and Tenant were managed by Jeffrey Ahlholm and Lawrence E. Feigen.

Twain is the owner of the raw land only and is the landlord of the Tenant. Tenant owns the buildings and improvements on the Premises. Twain shares the value and ownership of the real estate property with Tenant. Twain has no ownership interest in Debtor, which is only a guarantor of the Twain 99-year lease.

On or about December 29, 2021, Tenant and Twain entered into a 99-year ground lease (the "Ground Lease"), whereby Tenant leased Twain's property, and subleased the property to the Debtor, for the purpose of owning and operating the South City Hospital in St. Louis, Missouri (the "Hospital"), in exchange for certain base and supplement rent payments, among numerous other obligations. In conjunction with the execution of the Ground Lease, the Debtor (among other guarantors) executed a "Completion and Rent Payment Guaranty" in favor of Twain, guaranteeing all obligations owed by Tenant under the Ground Lease (the "Guaranty"). Contemporaneous with the execution of the Ground Lease and the Guaranty, Tenant and the Debtor entered into a Master Lease and Sublease Agreement permitting the Debtor to operate the Hospital (the "Sublease").

Per the Ground Lease, Tenant and Debtor made all of its quarterly rent payments to Twain from January 2022 through December 2022, which were capitalized into the Ground Lease Agreement at the mutual agreement of Twain and SA Hospital on December 29, 2021.

As part of the Ground Lease, Twain directly funded Building Resources, a mutually approved general contractor, in the amount of $6,460,063.24, for hospital improvements, based on detailed project requests and budgets.  Building Resources failed to complete the construction by the agreed-upon completion date and Debtor believes Building Resources misappropriated at least $1,996,644.56 of Twain Funding for the hospital improvements.

On May 24, 2022, Debtor entered into an Asset Purchase Agreement ("APA") and customary Interim Management Agreement ("IMA") with American Healthcare Systems ("AHS"). Upon entering into the APA between the Debtor and AHS, AHS began transitioning the operations and management of the Debtor's hospital business to AHS and AHS assumed the financial responsibility of operating the hospital at that time. During the period AHS took control of the operations and management of the Debtor's hospital business, AHS stopped making payments to Twain on the Ground Lease, AHS incurred over $10,000,000.00 in debt, and Debtor was named in 16 lawsuits.

*B.  Appointment of the Receivership of the Debtor*

On May 16, 2023, Twain sued the Debtor and Tenant in the Circuit Court of the City of St. Louis, Missouri, Case No. 2322-CC00960 (the "Receivership Action"). Twain sought the emergency appointment of a state court receiver of the Debtor and Tenant, their property and their operations. On, May 25, 2023, Circuit Court of the City of St. Louis, Missouri appointed Daniel Wiggins of Morris Anderson & Associates, Ltd. (the "Receiver") as receiver of the Debtor and Tenant, their operations, and their assets (the "Receiver Order").

The Receiver promised to provide the Debtor with general ledgers and other financial records at the beginning of the Receivership, but has to date yet to provide any financial records to Debtor's management. Initially, the Receiver discussed with Debtor's management the possibility of filing Bankruptcy for the Debtor and selling the Debtor's hospital business as a going concern. Twain and the Receiver instead have temporarily

shut down the Debtor's hospital operations and attempted to do a liquidation of the Debtor's assets which would realize far less value for the benefit of the creditors, than could be realized if the Debtor is permitted to reopen the hospital and sell it as a going concern.

### C. Debtor's Proposed Reorganization Efforts are in the Best Interest of All Creditors of the Estate

Debtor filed this Chapter 11 Bankruptcy case in an attempt to regain management of the Debtor and its hospital business operations, reopen the Debtor's hospital and sell the hospital and assign Tenant's Ground Lease with Twain, to generate sufficient funds to pay off the creditors of the estate. Debtor's management believes selling the Debtor and Tenant's assets together as an ongoing concern will generate significantly more money for the creditors, then a fire sale of the assets by the Receiver. Debtor currently has three (3) possible buyers lined up who Debtor believes can complete the sale, which would not only pay off Twain in full, but also provide significantly more funds for the remaining creditors of the estate.

Prior to the appointment of the Receiver, Debtor's management tried to discuss the potential buyers Debtor has lined up with Twain, but Twain refused to entertain the idea of the sale and moved forward with the receivership. The combined sale of Debtor and Tenant's assets as an ongoing concern, while keeping the hospital license intact will realize at least $8,000,000.00 in additional short-term value and over $10,000,000.00 in long-term value to the creditors of the estate by keeping the residency slot contract and program intact. Twain instead seeks a piecemeal fire sale of the assets, which will benefit Twain, to the detriment of all the remaining creditors of the estate.

During the brief period of the receivership, the Receiver made no efforts to pursue AHS or Building Resources to recover the significant damages these entities caused the Debtor, Tenant, Twain and all the creditors of the estate.

5

**DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF**

Debtor's reorganization in Bankruptcy is in the best interest of all creditors, whereas the Receiver's resumption of the fire sale of the Debtor's assets will only benefit Twain and the Receiver. Through the Bankruptcy, the Debtor seeks to obtain a more experienced healthcare receivables manager along with critical licensing and compliance management while the Debtor and Tenant sell the combined assets. Debtor believes it can effectuate a sale of the Debtor and Tenant's assets quickly, given it has three (3) potential buyers lined up, which will result in the highest realized value of the Debtor's and Tenant's assets to pay significantly more to the creditors then they would receive through the Receiver's liquidation efforts.

### III.    ARGUMENT

A. *In re Corporate & Leisure Event Productions, Inc.*, 351 B.R. 724 (Bankr. D. Ariz. 2006) Held Restrictions in a Receiver Order Which Was Appointed by the State Court on Behalf of Creditors of a Debtor are a Violation of a Debtor's Constitutional Right to File Bankruptcy

The issue in *Corporate & Leisure Event Productions, Inc.*, 351 B.R. 724 (Bankr. D. Ariz. 2006) was who, if anyone, may file a Chapter 11 petition for a Debtor after a state court has appointed a Receiver for the debtor, enjoined the Debtor from filing a bankruptcy petition, and removed the Debtor's corporate officers and directors. The Court denied the Receiver's Motion to Dismiss and concluded that **"federal bankruptcy law preempts state law and remains available to an eligible debtor and its constituents notwithstanding creditors' use of state law remedies in an attempt to bar the bankruptcy courthouse door."** (See *In re Corporate & Leisure Event Productions, Inc.*, 351 B.R. 724 (Bankr. D. Ariz. 2006))

In *Corporate & Leisure Event Productions, Inc.*, prepetition a Receiver was appointed by the State Court for the debtor, on behalf of numerous creditors of the debtor. The receivership order authorized the Receiver to remove "any director, officer, independent contractor, employee or agent of any of the Receivership Defendants, from

control of, management of, or participation in, the affairs of the Receivership Defendants." It enjoined the Receivership Defendants from doing any act to interfere with the Receiver's custody and management of the receivership assets, and specifically enjoined them from filing "any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code . . . without prior permission from this Court." (*Id.* at 727)

The Receiver immediately filed a Motion to Dismiss asserting that the debtor's principals engaged in a Ponzi-scheme and that based on the appointment of the Receiver, and removal of the debtor's principals as officers, directors and managers of the debtor, debtor's principals did not have authority to file Bankruptcy for the debtor. (*Id.* at 727)

The only issue was who was authorized to file Bankruptcy behalf of the debtor. The Court pointed out that ordinarily, the question of who has authority to file a Bankruptcy petition on behalf of a corporation is an intra-corporate dispute with some officers, directors or shareholders objecting to bankruptcy relief and asserting that some other shareholder, officer or director lacked sufficient corporate authority to make the filing. There was no such intra-corporate dispute here. Rather, the dispute as to existence of corporate authority was raised by creditors, who preferred the remedy they had in state court over a bankruptcy remedy. The Court opined that while intra-corporate disputes would ordinarily be governed by the law of the state of incorporation, this particular kind of creditor-driven intra-corporate dispute is governed instead by federal common law. (*Id.* at 728)

The U.S. Constitution confers on Congress the unique uniform bankruptcy power. Once Congress exercises that power it preempts and supersedes all state bankruptcy and insolvency laws and other state law remedies that might interfere with the uniform federal bankruptcy system. (*In re Corporate & Leisure Event Productions, Inc.,* at 728; U.S. CONST. art. I, § 8, cl. 4; Cent. Va. Cmty. Coll. v. Katz, 126 S. Ct. 990, 997-1000 (2006), *Sturges v. Crowninshield,* 17 U.S. (4 Wheat.) 122 (1819); Sherwood Partners, Inc.

v. Lycos, Inc., 394 F.3d 1198 (9th Cir. 2005) (Bankruptcy Code preempts state statute giving preference avoidance powers to an assignee for benefit of creditors); In re Miles, 430 F.3d 1083, 1089 (9th Cir. 2005) (bankruptcy law preempts state remedies for bad faith filing because the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code" "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike," and which needs to be "jealously guard[ed] . . . from even slight incursions and disruptions" from state law remedies), quoting MSR Exploration, Ltd., v. Meridian Oil, Inc., 74 F.3d 910, 915 (9th Cir. 2005)).

The Court held that "the paramount and exclusive federal jurisdiction in this regard was noted early on by the great equity jurist, Justice Story. Construing a bankruptcy statute that contained no automatic stay, Justice Story concluded that Congress intended to vest bankruptcy courts with jurisdiction to "suspend or control all proceedings in the state courts" (*In re Corporate & Leisure Event Productions, Inc.*, at 729; *Ex parte Christy*, 44 U.S. (3 How.) 292, 318-20 (1845)).

As Justice Story there noted, the Bankruptcy Act of 1841 did not specifically authorize bankruptcy courts to enjoin state courts, but Congress closed this loophole in the Bankruptcy Act of 1867, in which Congress for the first time amended the Judiciary Act of 1793 to expressly permit federal district courts sitting in bankruptcy to stay proceedings in state courts. (*In re Corporate & Leisure Event Productions, Inc.*, at 729; *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625-26 (1849)). The current Bankruptcy Code goes even further, not only by making the stay automatic, statutory and specifically applicable to government entities, **but also by specifically requiring receivers to turn over receivership property to bankruptcy trustees and debtors in possession.** (*In re Corporate & Leisure Event Productions, Inc.*, at 729-730, emphasis added).

Given the supremacy of Federal law, it is not surprising that a creditor's argument that a receivership order removes authority for a debtor or its corporate constituents to

file a bankruptcy case — have concluded that **state court receivership orders cannot bar debtors from resorting to the exclusive bankruptcy court jurisdiction**. Even prior to the Chandler Act (which contained the first corporate reorganization provisions), the Sixth Circuit so concluded even though the corporate debtor had consented to the receivership that had been pending for over two years and even though the state court "has issued the usual injunction against inference." "[T]he pendency of a receivership does not ordinarily prevent the filing of a voluntary petition." The Court in *Corporate & Leisure Event Productions* determined that this conclusion appears to be good law today. (*Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir. 1929); *Pa. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 564 (1990) ("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure); *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications."(citation omitted)).

Ten years later, the Sixth Circuit reached the same conclusion when a receivership order specifically enjoined the debtor's directors, officers and stockholders "from preparing or in any way aiding the institution of reorganization proceedings on behalf of the debtor corporation in the District Court without the consent of such state court." That court concluded that such a state court restraining order erroneously "denied to the appellee, its directors, stockholders and attorneys, access to the federal courts, thus depriving them of their constitutional right to relief under Sec. 77B of the Bankruptcy Act," citing the Uniform Bankruptcy Power of the Constitution. (*In re Corporate & Leisure Event Productions, Inc.*, at 730).

Shortly thereafter, the District Court for the Southern District of New York reached the same conclusion: "The appointment by a state court of a permanent receiver with full

power to act for the corporation does not affect the right of directors to act on behalf of a corporation in federal bankruptcy proceedings." Other courts have reached the same conclusion under the current Bankruptcy Code. **The only cases to the contrary appear to arise when there is a purely intra-corporate dispute (rather than a dispute with creditors)** as to who has the authority to file, or where the debtor is "ineligible for debtor status" under the Bankruptcy Code. ((*In re Corporate & Leisure Event Productions, Inc.*, at 730-731 (emphasis added); *Merritt v. Mt. Forest Fur Farms of Am., Inc.*, 103 F.2d 69, 71 (6th Cir. 1939); *United States v. Kras*, 409 U.S. 434 (1973), the privileges provided by the Bankruptcy Code may be among the "privileges and immunities" that the Fourteenth Amendment forbids states to abridge; *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 552 (7th Cir. 1985) ("[T]the exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief."); *Larson v. Kreisers, Inc.*, 112 B.R. 996, 998 1000 (Bankr. D.S.D. 1990) ("The court . . . has not unearthed any statutory or decisional law to support the contention that a state court receivership generally bars bankruptcy filing. Perhaps this is so because the argument runs so blatantly against the statutory right of a debtor to the privileges of the national statute on bankruptcies and the inherent prohibition against any bar by any other authority to the exercise of that right. . . . [The debtor's] officers and directors could pass a resolution to file bankruptcy despite state court orders not to do so."(citations omitted)); *In re S S Liquor Mart, Inc.*, 52 B.R. 226, 227 (Bankr. D.R.I. 1985) ("[I]t is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts [citations omitted] and it has been held that an order in a state court receivership specifically restraining the debtor corporation, its stockholders, officers, and directors from instituting federal reorganization proceedings is an unconstitutional deprivation of the right to bankruptcy relief."); *In re Donaldson Ford, Inc.*, 19 B.R. 425 (Bankr. N.D. Ohio 1982).

It is true that bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity. This rule, however, derives not from the language of the Bankruptcy Code (or its predecessor Bankruptcy Act), but rather from federal common law in the absence of statutory directive. The Bankruptcy Code neither specifies who has authority to file a corporate petition nor requires that state law be the exclusive source of any such authority. (*In re Corporate & Leisure Event Productions, Inc.,* at 731).

As such, Federal common law is appropriate in two categories of cases, "those in which a federal rule of decision is `necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640-41 (1981) (citations omitted). *See* Adam J. Levitin, Toward A Federal Common Law of Bankruptcy: Judicial Lawmaking in a Statutory Regime, 80 Am. Bankr. L.J. (2006) (forthcoming). "Other than the requirement that the petition be a `voluntary' act, 11 U.S.C. § 301, the Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding." *In re Quarter Moon Livestock Co., Inc.,* 116 B.R. 775, 778 (Bankr. D. Idaho 1990), quoting *In re Autumn Press, Inc.,* 20 B.R. 60, 61 (Bankr. D. Mass. 1982).

Additionally, there is an exception to the federal common law reliance on state law when the state law is in the form of a receivership order that attempts to preclude any of the original constituents of the organizational entity from filing a petition on its behalf, in order to maintain the state court remedy that has been obtained by creditors. It makes no difference whether the corporate officers and directors were actually removed by the receiver or the receivership order merely enjoins their interference or filing of a petition. In either case, **state law withdraws their authority to file for bankruptcy relief and yet in both cases the unanimous federal common law holds that they are nevertheless entitled to do so**. Much of this common law predates the drafting and

adoption of the Bankruptcy Code, so Congress must be assumed to have incorporated it when it drafted the Code. If removal of corporate officers and directors by a receivership order were sufficient to prevent a bankruptcy filing, creditors who seek their state court remedies to the exclusion of all others would routinely obtain receivership orders with such boilerplate language. This is a tactic that bankruptcy law has prevented at least since 1867. (*In re Corporate & Leisure Event Productions, Inc.,* at 731).

Congress expressly incorporated this Federal common law when the **Chandler Act of 1938 made explicit that a bankruptcy case would ordinarily supersede a state receivership and that a state receiver would ordinarily be required to turn over the estate assets to a debtor in possession or trustee pursuant to Section 543**. The fact that Congress granted such express relief notwithstanding that receivership orders generally included the "usual injunction against inference" necessarily implies that Congress intended such state law not to control who may petition for bankruptcy relief. (*In re Corporate & Leisure Event Productions, Inc.,* at 732; 1 JAMES WM. MOORE, ET AL., COLLIER ON BANKRUPTCY ¶ 2.77, at 390.8 (1) (14th ed. 1974); H.R. 6439, 75th Cong., 1st Sess 12 (1937), quoted in COLLIER, supra, at 390.8(2), n. 4).

Congress obviously intended bankruptcy relief to be available for the benefit of many of the constituents of a business entity, including not only the creditor interests but also the equity interests and perhaps those of employees and customers as well. While bankruptcy case law generally refers to state law to determine who has eligibility to file the petition, it unanimously refuses to do so (in the absence of an intra-corporate dispute) when state law has provided a creditor's remedy to vest that authority in a receiver. (*In re Corporate & Leisure Event Productions, Inc.,* at 732)

The Court in *In re Corporate & Leisure Event Productions, Inc.* applied the Federal common law and denied the Receiver's Motion to Dismiss. The facts in *In re Corporate & Leisure Event Productions, Inc.* are almost identical to the Debtor's case herein. The dispute as to whether Jeffrey Ahlholm and Lawrence F. Feigen had authority

to file Bankruptcy for the Debtor is brought by a Receiver appointed by creditor Twain. The cases cited by Twain are all intra-corporate disputes, and not disputes brought by a Receiver appointed by a creditor. Although in intra-corporate disputes, Bankruptcy Courts have applied state law to determine that the appointment of a receiver and removal of Debtor's corporate management results in a debtor's former management not having authority to file a Bankruptcy case on behalf of a corporate debtor, the facts herein are distinguishable.

*In re Corporate & Leisure Event Productions, Inc.* affirmatively states that in the scenario where the Receiver was appointed by creditors of the debtor, such as is here, the receivership orders and injunctions preventing the Debtor for filing Bankruptcy are unconstitutional and that the Debtor ha a constitutional right to file the instant Bankruptcy petition herein. Wherefore, Debtor asks that the Court deny Twain's Motion to Dismiss.

B. Twain's Authority Does Not Support Twain's Proposition that Debtor's Bankruptcy Case Must be Dismissed as Twain's Receivership Order Limiting the Debtor's Management's Ability to File Bankruptcy is Not Binding

Twain relies on *In re Licores*, 8:13-bk-10578-MW, to predicate its Motion to Dismiss. In *In re Licores*, a receiver was appointed prior to the debtor filing Bankruptcy after a State Court Action was brought among five brothers regarding their ownership interests in the partnership that owned and operated several businesses. The State Court made a determination of each of the five brothers ownership interests, and make findings that certain brothers were engaging in fraudulent activities as to the remaining brothers-partners. The prevailing party in the State Court action sought the appointment of a receiver to manage the partnership. In *In re Licores*, the receiver was appointed due to an intra-corporate dispute.

After appointment of the receiver, one of the brothers continued to seek removal of the receiver in the State Court, and when that failed, the same brother filed Bankruptcy

1    for the debtor In *In re Licores* despite the receivership order having language expressly

2    limiting the right to file Bankruptcy solely with the receiver. The receiver in *In re Licores*

3    filed a Motion to Dismiss pursuant to 11 U.S.C. § 305 and argued that dismissal was in

4    the best interest of creditors as the receiver had been in place for nearly one and a half

5    years and had eliminated many of the major issues plaguing the operations of the

6    Debtor's business. (See *In re Licores*, 8:13-bk-10578-MW, Docket no.: 24, Page 22,

7    Lines 9-12). Further, the receiver argued that the restrictions as to who had authority to

8    file Bankruptcy for the debtor in *Licores* should apply. The Court in *In re Licores* found

9    that the brothers did not have authority to file Bankruptcy for the debtor. However, this

10   case is distinguishable from the Debtor's case herein as the receiver in *In re Licores*, the

11   receiver was appointed due to an intra-corporate dispute, which upholds State Court

12   restrictions on filings Bankruptcy in receivership orders. However, as noted in *In re*

13   *Corporate & Leisure Event Productions, Inc.*, when the receiver is appointed by a

14   creditor, the restrictions on filing Bankruptcy by Debtor's management is not upheld in

15   the Bankruptcy Court, as it is a violation of the Debtor's constitutional rights.

16

17        Twain next cites to *Chitex Commc'n, Inc. v. Kramer*, 168 B.R. 587, 589-91 (S.D.

18   Tex. 1994) where again a receiver was appointed as a result of an ownership dispute as to

19   the debtor in the State Court. Again, this case is distinguishable as the receiver was not

20   appointed by a creditor, and as a result the Bankruptcy Court dismissed that debtor's case.

21        Twain then cites to *Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy,*

22   *Inc.)*, 901 F.3d 1139 (9th Cir. 2018) where the appellate court upheld the bankruptcy

23   court dismissal of the Debtor's Bankruptcy petition because it found that the petition

24   lacked the requisite authority from the corporation's board of directors where a receiver

25   appointed by the Nevada state court already had removed them from the corporation's

26   board of directors. (*Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)*, 901

27   F.3d 1139, 1140 (9th Cir. 2018)).  In *Sino*, a group of forty-three shareholders had filed a

28   Nevada state-court petition in an attempt to acquire financial information from the debtor

and for declaratory relief. The shareholder plaintiffs filed for entry of default, which the state court granted and a few months after an entry of default, on March 17, 2014, the shareholder plaintiffs filed a motion for the appointment of a receiver. The Nevada state court granted the motion on May 12, 2014. *Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)*, 901 F.3d 1139, 1140 (9th Cir. 2018)

Again, this case is distinguishable from the Debtor's case herein as in *Sino* the shareholder's sought the receivership over the debtor, which is an intra-corporate dispute. As pointed out in *In re Corporate & Leisure Event Productions, Inc.*, and is the case here, the receiver in Debtor's case was appointed by a creditor and not as a result of an intra-corporate dispute, and pursuant to *In re Corporate & Leisure Event Productions, Inc.* restrictions to file Bankruptcy in a receivership order are not upheld.

Twain cites to *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769 (9th Cir. 1985) which does not apply to this case at all, as the issue in Tenneco was "whether the district court was correct in ruling that the tax clause in certain oil and gas leases shifts from lessor to lessee the incidence of the tax levied under the Crude Oil Windfall Profit Tax Act of 1980 ("Act"), 26 U.S.C. § 4986 et seq. (1982)." *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 770 (9th Cir. 1985)

Twain has not provided any authority in support of its contention that Debtor's case must be dismissed due to the restrictions in the Receivership Order. As held in *In re Corporate & Leisure Event Productions, Inc.*, restrictions in receivership orders, as they relate to a debtor's management filing Bankruptcy for the debtor are only upheld when the receiver was appointed as a result of an intra-corporate dispute, and not when a receiver is appointed by a creditor of the Bankruptcy estate.

C.  Debtor's Case is in the Best Interest of All Creditors of the Estate Versus
   Continuance of the Receiver Only Benefits the Receiver and Twain

Debtor filed this Chapter 11 Bankruptcy case in an attempt to regain management of the Debtor and its Hospital, reopen the Debtor's Hospital and sell the Hospital and

assign Tenant's Ground Lease with Twain, to generate sufficient funds to pay off the creditors of the estate. Debtor's management believes selling the Debtor and Tenant's assets together as an ongoing concern will generate significantly more money for the creditors, then a fire sale of the assets by the Receiver. Debtor currently has three (3) possible buyers lined up who Debtor believes can complete the sale, which would not only pay off Twain in full, but also provide significantly more funds for the remaining creditors of the estate. The combined sale of Debtor and Tenant's assets as an ongoing concern, while keeping the hospital license intact will realize at least $8,000,000.00 in additional short-term value and over $10,000,000.00 in long-term value to the creditors of the estate by keeping the residency slot contract and program intact. Twain instead seeks a piecemeal fire sale of the assets, which will benefit only Twain, to the detriment of all the remaining creditors of the estate.

Debtor's reorganization in Bankruptcy is in the best interest of all creditors, whereas the Receiver's resumption of the fire sale of the Debtor's assets will only benefit Twain and the Receiver. Through the Bankruptcy, the Debtor seeks to obtain a more experienced healthcare receivables manager along with critical licensing and compliance management while the Debtor and Tenant sell the combined assets. Debtor believes it can effectuate a sale of the Debtor and Tenant's assets quickly given it has three (3) potential buyers lined up, which will result in the highest realized value of the Debtor's and Tenant's assets to pay significantly more to the creditors then they would receive through the Receiver's liquidation efforts.

///

///

///

///

///

///

**DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF**

# IV.    CONCLUSION

Wherefore, Debtor asks that the Court deny Twain's Motion to Dismiss Chapter 11, and grant any further relief deemed necessary and proper.

Dated:  August 17, 2023                    LAW OFFICES OF MICHAEL JAY BERGER

By: _____

MICHAEL JAY BERGER
*Proposed* Counsel for Debtor-in-Possession,
SA Hospital Acquisition Group, LLC

## DECLARATION OF JEFFREY AHLHOLM

I, Jeffrey Ahlholm, declare and state as follows:

1.      I am a managing member of SA Hospital Acquisition Group, LLC,  the Debtor and Debtor-in-Possession (the "Debtor"). I am over the age of 18.  I have personal knowledge of the facts I state below, and if I were to be called as a witness, I could and would competently testify about what I have written in this declaration.

2.      Lawrence E. Feigen and I, as co-managing members of SA Hospital Acquisition Group, LLC, (the "Debtor") filed a voluntary Chapter 11 petition on behalf of the Debtor on August 11, 2023. The Debtor is a guarantor of debt incurred by SA Hospital Real Estate Holdings, LLC (the "Tenant"). The Debtor and Tenant have common ownership and management. Prior to appointment of the receiver, both the Debtor and Tenant were managed by Lawrence E. Feigen and myself. The members of both the Debtor and Tenant are Jeffrey Ahlholm, Lawrence E. Feigen, and Troy A. Schell.

3.      Twain is the owner of the raw land only and the landlord of the Tenant. Tenant owns the buildings and improvements of the Premises. Twain shares the value and ownership of the real estate property with Tenant. Twain has no ownership interest in Debtor, which is only a guarantor of the Twain 99-year lease.

4.      On or about December 29, 2021, Tenant and Twain entered into a 99-year ground lease (the "Ground Lease"), whereby Tenant leased Twain's property, and subleased the property to the Debtor, for the purpose of owning and operating the South City Hospital in St. Louis, Missouri (the "Hospital"), in exchange for certain base and supplement rent payments, among numerous other obligations. In conjunction with the execution of the Ground Lease, the Debtor (among other guarantors) executed a "Completion and Rent Payment Guaranty" in favor of Twain, guaranteeing all obligations owed by Tenant under the Ground Lease (the "Guaranty").

18

**DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF
POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF**

Contemporaneous with the execution of the Ground Lease and the Guaranty, Tenant and the Debtor entered into a Master Lease and Sublease Agreement permitting the Debtor to operate the Hospital (the "Sublease").

5.    Per the Ground Lease, Tenant and Debtor made all of its quarterly rent payments to Twain from January 2022 through December 2022, which were capitalized into the Ground Lease Agreement at the mutual agreement of Twain and SA Hospital on December 29, 2021.

6.    As part of the Ground Lease, Twain directly funded Building Resources, a mutually approved general contractor, in the amount of $6,460,063.24, for hospital improvements, based on detailed project requests and budgets. Building Resources failed to complete the construction by the agreed-upon completion date and Debtor believes Building Resources misappropriated at least $1,996,644.56 of Twain Funding for the hospital improvements.

7.    On May 24, 2022, Debtor entered into an Asset Purchase Agreement ("APA") and customary Interim Management Agreement ("IMA") with American Healthcare Systems ("AHS"). Upon entering into the APA between the Debtor and AHS, AHS began transitioning the operations and management of the Debtor's hospital business to AHS and AHS assumed the financial responsibility of operating the hospital at that time. During the period AHS took control of the operations and management of the Debtor's hospital business, AHS stopped making payments to Twain on the Ground Lease, and AHS incurred over $10,000,000.00 in debt and Debtor was named in 16 lawsuits.

8.    On May 16, 2023, Twain sued the Debtor and Tenant in the Circuit Court of the City of St. Louis, Missouri, Case No. 2322-CC00960 (the "Receivership Action"). Twain sought the emergency appointment of a state court receiver of the Debtor and Tenant, their property and their operations. On, May 25, 2023, Circuit Court of the City of St. Louis, Missouri appointed Daniel Wiggins of Morris Anderson & Associates, Ltd.

DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF

(the "Receiver") as receiver of the Debtor and Tenant, their operations, and their assets (the "Receiver Order").

9.      The Receiver promised to provide the Debtor with general ledgers and other financial records at the beginning of the Receivership, but has to date yet to provide any financial records to Debtor's management. Initially, the Receiver discussed with Debtor's management the possibility of filing Bankruptcy for the Debtor and selling the Debtor's hospital business as a going concern. Twain and the Receiver instead have temporarily shut down the Debtor's hospital operations and attempted to do a liquidation of the Debtor's assets which would realize far less value for the benefit of the creditors, than could be realized if the Debtor is permitted to reopen the hospital and sell it as a going concern.

10.     Debtor filed this Chapter 11 Bankruptcy case in an attempt to regain management of the Debtor and its hospital business operations, reopen the Debtor's hospital and sell the hospital and assign Tenant's Ground Lease with Twain, to generate sufficient funds to pay off the creditors of the estate. Debtor's management believes selling the Debtor and Tenant's assets together as an ongoing concern will generate significantly more money for the creditors, then a fire sale of the assets by the Receiver. Debtor currently has three (3) possible buyers lined up who Debtor believes can complete the sale, which would not only pay off Twain in full, but also provide significantly more funds for the remaining creditors of the estate.

11.     Prior to the appointment of the Receiver, Debtor's management tried to discuss the potential buyers Debtor has lined up with Twain, but Twain refused to entertain the idea of the sale and moved forward with the receivership. The combined sale of Debtor and Tenant's assets as an ongoing concern, while keeping the hospital license intact will realize at least $8,000,000.00 in additional short-term value and over $10,000,000.00 in long-term value to the creditors of the estate by keeping the residency

DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF
POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF

slot contract and program intact. Twain instead seeks a piecemeal fire sale of the assets, which will benefit Twain, to the detriment of all the remaining creditors of the estate.

12.    During the brief period of the receivership, the Receiver made no efforts to pursue AHS or Building Resources to recover against the significant damages these entities cause the Debtor, Tenant, Twain and all the creditors of the estate.

13.    Debtor's reorganization in Bankruptcy is in the best interest of all creditors, whereas the Receiver's resumption of the fire sale of the Debtor's assets will only benefit Twain and the Receiver. Through the Bankruptcy, the Debtor seeks to obtain a more experienced healthcare receivables manager along with critical licensing and compliance management while the Debtor and Tenant sell the combined assets. Debtor believes it can effectuate a sale of the Debtor and Tenant's assets quickly given it has three (3) potential buyers lined up, which will result in the highest realized value of the Debtor's and Tenant's assets to pay significantly more to the creditors then they would receive through the Receiver's liquidation efforts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that if called as a witness, I can and will testify competently thereto.

Executed August 17, 2023 at ___Newbury Park___, California.

_Jeffrey Ahlholm_
Jeffrey Ahlholm

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO TWAIN GL XXV, LLC'S MOTION TO DISMISS CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JEFFREY AHLHOLM IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 8/17/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Proposed Counsel for Debtor: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Brian David Fittipaldi    brian.fittipaldi@usdoj.gov
Counsel for Twain GL XXV, LLC: Marshall J Hogan    mhogan@swlaw.com, knestuk@swlaw.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 8/17/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Honorable Ronald A. Clifford III
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 233 / Courtroom 201
Santa Barbara, California 93101-2511

**Served by Email:**
Counsel for Twain GL XXV, LLC: Marshall J. Hogan at mhogan@swlaw.com
Counsel for Twain GL XXV, LLC: Anthony P. Cali at Anthony.cali@stinson.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/17/2023 | Yathida Nipha | /s/Yathida Nipha |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**